UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:

Carlos Javier Molina,

                  Debtor.

---------------------------------------------------------------x

Jack Landsmanas Stern

                Plaintiff,

      v.

Carlos Javier Molina,

                Defendant.

---------------------------------------------------------------x

Chapter 7

Case No.: 8-21-70830-las

Adv. Pro. No.: 8-21-08139-las

## MEMORANDUM DECISION AND ORDER DENYING (I) DEFENDANT'S MOTION TO REOPEN ADVERSARY PROCEEDING TO VACATE UNDER FED. R. CIV. P. 60(b) THE COURT'S ORDER APPROVING SETTLEMENT AGREEMENT AND JUDGMENT AND (II) CROSS MOTIONS FOR SANCTIONS

Carlos Javier Molina (the "Defendant" or "Mr. Molina"), proceeding *pro se*, filed a motion (the "Rule 60(b) Motion") [AP Dkt. No. 108][1] under Rules 60(b)(2), 60(b)(3), and 60(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), as made applicable here by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an order (i) reopening the above-captioned adversary proceeding and (ii) vacating (a) the Order Approving Settlement Agreement signed by the parties and their respective counsel [AP Dkt. No. 104], and (b) the Order and Judgment for Plaintiff [AP Dkt. No. 105].[2] Plaintiff

---

[1] All references to "AP Dkt. No. (number)" refer to the corresponding docket entry number for this adversary proceeding, Adv. Pro. No. 21-08139.

[2] The Order Approving Settlement Agreement and the Order and Judgment for Plaintiff were entered upon the parties' Joint Emergency Motion to Dismiss Adversary Proceeding and Enter Judgment Pursuant to the Settlement (the "Joint Emergency Motion") [AP Dkt. No. 99]. The Joint Emergency Motion was supported by the Declaration of the Defendant (the 'Molina Declaration") [AP Dkt. No. 99-2] and a separate Declaration of Albert A. Ciardi, III, Esq. (the "Ciardi Declaration"), counsel for the Defendant [AP Dkt. No. 99-3].

Jack Landsmanas Stern (the "Plaintiff") filed opposition to the Rule 60(b) Motion. [AP Dkt. Nos. 125-127, 131-132, 147-148]. The Defendant replied. [AP Dkt Nos. 137-140].

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference of the United States District Court for the Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a).

This matter has been fully briefed, and the Court has considered carefully the parties' submissions, the relevant law, and the record in this action. For the reasons set forth below, the Rule 60(b) Motion is denied and the parties' respective motions for sanctions are denied.

## I.    Background[3]

The Court assumes the parties' familiarity with the background and procedural history of Mr. Molina's chapter 7 case and this adversary proceeding, and recounts only those facts relevant to this decision.

Mr. Molina filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code with this Court on May 3, 2021 (the "Petition Date").[4] [Bankr. Dkt. No. 1].[5] This adversary proceeding (the "Landsmanas Stern Action") is one of three adversary proceedings

---

[3] Unless otherwise noted, the facts are taken from the parties' submissions in connection with the Rule 60(b) Motion. The Court has also taken judicial notice of the docket in this adversary proceeding (Adv. Pro. No. 21-08139) and the docket in the main bankruptcy case (Case No. 21-70830). *See Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 F. Appx. 46, 48 (2d Cir. 2005) (stating that courts are empowered to take judicial notice of public filings, including a court's docket); *Levine v. Egidi*, No. 93 C 188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *Katzenstein v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) (taking judicial notice of the docket in the underlying bankruptcy case); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 2013) (electing to take judicial notice of the entire file in the case for sake of completeness as a bankruptcy court has the inherent authority to take judicial notice of entries on its own docket).

[4] According to page 6 of the Petition, the Defendant (as the debtor) signed the Petition on April 29, 2021. [Bankr. Dkt. No. 1].

[5] All references to "Bankr. Dkt. No. (number)" refer to the corresponding docket entry number for the main bankruptcy case, Case No. 21-70830.

2

commenced against Mr. Molina objecting to the dischargeability of debts pursuant to 11 U.S.C. § 523[6] and/or objecting to his discharge under § 727.[7]

Mr. Molina was represented in this adversary proceeding by the law firm of Ciardi Ciardi & Astin (the "Ciardi Firm").[8] By motion dated March 2, 2022, the Ciardi Firm moved to withdraw as counsel of record. [AP Dkt. No. 17].[9] By letter filed on March 15, 2022, the Ciardi Firm advised the Court that it had agreed to remain as counsel of record for the Defendant to complete the pending document production. [AP Dkt. No. 20]. Thereafter, by letter filed on April 4, 2022, the Ciardi Firm advised the Court that the parties completed document production. [AP Dkt. No. 21]. An Order authorizing the Ciardi Firm to withdraw as counsel of record in this adversary proceeding was entered on April 5, 2022. [AP Dkt. No. 22]. After entry of the Order authorizing the withdrawal of the Ciardi Firm as counsel, Mr. Molina proceeded *pro se* in this adversary proceeding. The Ciardi Firm later appeared as Mr. Molina's counsel in connection with the settlement of this adversary proceeding. *See* Joint Emergency Motion [AP Dkt. No. 99], Molina Declaration [AP Dkt. No. 99-2], and Ciardi Declaration [AP Dkt. No. 99-3].[10]

---

[6] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

[7] The other two adversary proceedings are: (i) *Jorge A. Carreras v. Carlos Javier Molina*, Adv. Pro. No. 21-08138-las (the "Carreras Action") in which Mr. Carreras objects to Mr. Molina's discharge under § 727, or, in the alternative, seeks a determination that that the debt owed to him is nondischargeable under § 523, and (ii) *Allen B. Mendelsohn, as Trustee of the Estate of Carlos Javier Molina, v. Carlos Javier Molina*, Adv. Pro. No. 21-08163-las (the "Trustee Action") in which the Trustee objects to Mr. Molina's discharge under § 727.

[8] The Ciardi Firm was also counsel for Mr. Molina in his Chapter 7 case.

[9] The Ciardi Firm also separately moved to withdraw as counsel of record for Mr. Molina in the Carreras Action and in the Trustee Action. Orders were entered on March 7, 2022 in each of these adversary proceedings authorizing the Ciardi Firm to withdraw as counsel.

[10] On November 7, 2022, the Ciardi Firm filed a Notice of Appearance in this adversary proceeding on behalf of Mr. Molina. [AP Dkt. No. 101].

### A.    The Plaintiff's Proofs of Claim and the Complaint

On August 17, 2021, the Plaintiff filed three proofs of claim in Mr. Molina's Chapter 7 case, identified on the claims register as Claim Nos. 12-1, 13-1 and 14-1 (collectively, the "Landsmanas Stern Claims"). According to Claim No. 12-1, the Plaintiff asserts an unsecured claim in the amount of $2,874,767.23. According to Claim No. 13-1, the Plaintiff asserts an unsecured claim in the amount of $1,615,838.91. According to Claim No. 14-1, the Plaintiff asserts an unsecured claim in the amount of $5,000,000.

On September 10, 2021, the Plaintiff commenced this adversary proceeding with the filing of a Complaint [AP Dkt. No. 1], as amended by the First Amended Complaint [AP Dkt. No. 6], and by the Second Amended Complaint [AP Dkt. No. 7]. The Second Amended Complaint is the operative complaint in this adversary proceeding. In the Second Amended Complaint, the Plaintiff centrally alleges that the Defendant "fraudulently induced millions of dollars in loans and investments" from the Plaintiff, and therefore the Landsmanas Stern Claims should be non-dischargeable under § 523(a)(2)(A) or, in the alternative, Mr. Molina should be denied a discharge under § 727(a)(2) and § 727(a)(4). *See generally* Second Amended Complaint. The Defendant filed his answer and asserted affirmative defenses on October 13, 2021 (the "Answer"). [AP Dkt. No. 9]. Pursuant to the Court's Order Extending Discovery Deadline, entered August 29, 2022, all discovery was to be completed by November 15, 2022. [AP Dkt. No. 28]. On November 4, 2022, prior to the discovery completion date, the parties filed the Joint Emergency Motion seeking approval of a settlement and dismissal of this adversary proceeding. [AP Dkt. No. 99]. As noted above, Mr. Molina was represented by the Ciardi Firm in connection with the settlement and dismissal of this adversary proceeding.

### B.    Parties' Motions for Sanctions

On May 2, 2022, the Defendant, proceeding *pro se*, filed a motion seeking to impose sanctions against the Plaintiff's counsel, Gabriel Hertzberg, Esq. ("Mr. Hertzberg"), alleging

that the commencement of the Landsmanas Stern Action violated Bankruptcy Rule 9011(b)(1) (as amended, the "Defendant's Sanctions Motion"). [AP Dkt. Nos. 32, 36]. In brief, the Defendant alleged that Mr. Hertzberg filed the complaint with false or misleading statements of material fact. Through the Defendant's Sanctions Motion, the Defendant sought an order from the Court finding that Mr. Hertzberg filed the complaint for an improper purpose and that he knowingly filed the complaint containing allegations without evidentiary support, awarding the reimbursement of expenses and attorneys' fees incurred by the Defendant, and imposing other sanctions as appropriate. *See generally* Defendant's Sanctions Motion. Related to the Defendant's Sanctions Motion, the Defendant filed a motion to compel the Plaintiff to comply with certain discovery demands and requests for production of documents on May 18, 2022 (the "Motion to Compel"). [AP Dkt. No. 35]. For his part, Mr. Hertzberg filed an opposition to the Defendant's Sanctions Motion and the Motion to Compel (the "Hertzberg Opposition"). [AP Dkt. No. 48]. Additional pleadings were filed by the parties following the filing of the Hertzberg Opposition. [AP Dkt. Nos. 66, 77, 81]. The Court heard oral argument and reserved its decision on the Defendant's Sanctions Motion and the Motion to Compel.

The Plaintiff filed his own request for sanctions against the Defendant (the "Plaintiff's Sanctions Motion") alleging the Defendant submitted altered and fabricated judicial decisions and government documents from Argentina as supporting exhibits for the Rule 60(b) Motion. [AP Dkt. Nos. 116, 117, 118]. The Defendant responded to the Plaintiff's Sanctions Motion [AP Dkt. Nos. 119, 120, 130], which in turn drew further responses from the Plaintiff. [AP Dkt. Nos. 134, 135][11].

---

[11] The Defendant filed multiple exhibits to "address an inadvertent error concerning the translations and certification" of certain exhibits he filed in support of his Rule 60(b) Motion. [AP Dkt. Nos. 113, 115, 123]. On December 12, 2023, the Defendant filed the "complete versions of the exhibits previously included in [his] opposition" filed on December 11, 2023, to the Plaintiff's Sanctions Motion. [AP Dkt. No. 133].

### C.     The Defendant's Arrest and Detention in Argentina

In August 2020, prior to the Petition Date, the Plaintiff initiated a criminal complaint (the "Mexico Complaint") with the authorities in Mexico City, Mexico (the "Mexico Action"). *See Second Corrected Declaration of Gabriel Hertzberg*, at ¶ 2. [AP Dkt. No. 132]. The Mexico Attorney General thereafter prosecuted the Mexico Action, and during the Chapter 7 case Mr. Molina was arrested and detained in Argentina in September 2022, pending extradition to Mexico. *See* Molina Declaration, at ¶ 4. According to the Defendant's testimony, he was first held in jail for about a week and was then placed under house arrest for approximately five months. [Dec. 19 Tr.[12] at 9:18-10:3, 13:4-14:4]. Shortly after his release from house arrest, Mr. Molina was arrested a second time in Argentina and held for about another five months before being allowed to return to the United States. [*Id*. at 14:5-16:9].

### D.     Joint Motion to Dismiss and Entry of Judgment Pursuant to Settlement of the Landsmanas Stern Action

As noted above, on November 4, 2022, the Defendant and the Plaintiff filed the Joint Motion to Dismiss with the Court. [AP Dkt. No. 99]. An affidavit of service with respect to the Joint Motion to Dismiss was filed with the Court on November 7, 2022. [AP Dkt. No. 102].

Through the Joint Motion to Dismiss, the movants sought approval of a settlement between the Defendant and the Plaintiff resolving their dispute over claims asserted by the Plaintiff amounting to approximately $9.5 million, and which were reflected in the Landsmanas Stern Claims filed in the Chapter 7 case. [AP Dkt. No. 99-1 (as corrected at AP Dkt. No. 103, the "Settlement Agreement")]. Among other things, the Settlement Agreement provided for the fixing of the Plaintiff's claim in the amount of $6,880,000 (the "Settlement Amount") and the entry of a judgment for the Settlement Amount. In addition, the Settlement

---

[12] For convenience, citations to the transcript for the hearing held on December 19, 2023, are cited as "Dec. 19 Tr.".

Agreement provided that the Settlement Amount would be non-dischargeable in the Chapter 7 case or any other bankruptcy case in which the Defendant was a debtor. *See* Settlement Agreement, at ¶¶ 2-3. The Settlement Agreement further provided for dismissal of the Landsmanas Stern Action with prejudice and a mutual release of claims (other than those rights and obligations set forth in the judgment) and required the Plaintiff to take the necessary and appropriate procedures under Mexico law to withdraw, with prejudice, his complaint that gave rise to the Mexico Action. *See id*. at ¶¶ 2, 4-5.

The Settlement Agreement provided that by executing the Agreement, the executing party represented, among other things, that "he is under no duress, coercion, or compulsion of any kind whatsoever but, instead, enters into this Agreement willfully, voluntarily, and having been fully informed of the premises and concluded that the terms hereof are in his own best interests." Settlement Agreement, at ¶ 12.c; *id*. at ¶ 14 ("The Parties have entered into this Agreement freely, voluntarily, and without duress of any kind or nature, after having consulted with professionals of their choice.").

Notably, in filing the Joint Motion to Dismiss, each party was represented by his own counsel. As stated in the Joint Motion to Dismiss, "Plaintiff determined it was essential that Defendant be advised by his own separate and independent legal counsel of his rights concerning all relevant matters, including to avoid the possibility that Defendant could later seek to contend that any aspect of the Settlement was unenforceable on account of any alleged duress or any other legal or equitable doctrine of any similar nature that could potentially (if improperly) deprive Plaintiff of the benefit of the bargain to be reached through the negotiation process." Joint Motion to Dismiss, at ¶ 3; *see also* Settlement Agreement, at p. 1 (expressly reciting that "Plaintiff declined to enter into this Agreement unless Defendant was advised and represented by competent independent legal counsel of Defendant's choosing in

connection with the Agreement" and that the "terms of this Agreement were negotiated in good faith at arms' length").

In support of the Joint Motion to Dismiss, the movants filed the Molina Declaration [AP Dkt. No. 99-2] and the Ciardi Declaration [AP Dkt. No.99-3]. As stated in the Molina Declaration, the Defendant declared under penalty of perjury that the Joint Motion to Dismiss was "jointly prepared together with [the Plaintiff]" and that he "obtained Plaintiff's consent" to seek the approval of the Joint Motion to Dismiss on an expedited basis. Molina Declaration, at ¶¶ 2-3. The Defendant also stated that he "believe[d] the Settlement Agreement is fair to me and also to Plaintiff and should be approved" as soon as possible. *Id.* at ¶ 6.

Among the "important benefits" emphasized by the Defendant in the Molina Declaration was the dismissal of the Landsmanas Stern Action and the Plaintiff's notification to the Mexico Attorney General that he wished to withdraw the Mexico Complaint with prejudice. Molina Declaration, at ¶ 4. The Defendant also acknowledged that it was his "understanding and belief, based solely on advice [he] received from [his] own Mexican and Argentinian counsel, that Plaintiff's notification to the Mexican Attorney General will lead to [his] being released from house arrest, terminate the extradition process, and enable [his] return to the United States." *Id.*

As previously noted, while the Defendant initially proceeded in the Landsmanas Stern Action on a *pro se* basis after the withdrawal of the Ciardi Firm as his counsel, the Defendant later "re-engaged Mr. Ciardi" as his legal counsel in connection with the Settlement Agreement, noting that the selection of Mr. Ciardi was the Defendant's decision. Molina Declaration, at ¶ 5. According to the Molina Declaration, "Plaintiff insisted that [he] be represented by [his] own separate and independent legal counsel and declined to participate in settlement discussions with [him] unless [he] obtained [his] own independent separate

legal counsel." *Id*. The Defendant further stated that he had "in-depth communications with Mr. Ciardi regarding this matter" and that "[Mr. Ciardi] advised me concerning the Settlement Agreement" and "[Mr. Ciardi] answered all of the questions I asked him about these matters." *Id*. Paragraph 14 of the Settlement Agreement similarly provided: "The Parties further represent that their respective counsel have presented and explained to each of them the entire contents of this Agreement as well as its legal consequences. The Parties further represent that before signing this Agreement, they fully understood each of its terms and conditions." Settlement Agreement, at ¶ 14.

In the Ciardi Declaration, Mr. Ciardi confirmed that he was "re-engaged by Defendant to represent him in negotiating and documenting the Settlement that is embodied in the Settlement Agreement." Ciardi Declaration, at ¶ 4. He added that he "provided legal advice to Defendant about the terms of the Settlement Agreement" and that he had "in-depth communications with Defendant regarding this matter, . . . concerning the settlement negotiations, and . . . answered all of Defendant's questions [to the best of his ability]." *Id*.

On November 7, 2022, the Court entered the Order Approving Settlement Agreement (the "Settlement Agreement Order"), which approved the Settlement Agreement, approved the entry of a judgment in favor of the Plaintiff, and directed the Clerk's Office to dismiss the Landsmanas Stern Action. [AP Dkt. No. 104]. Also on November 7, the Court entered the Order and Judgment for Plaintiff (the "Judgment"), which provided for judgment in favor of the Plaintiff against the Defendant declaring that the Settlement Amount of $6,880,000 is non-dischargeable under § 523. [AP Dkt. No. 105]. The Landsmanas Stern Action was officially closed by the Clerk's Office on November 22, 2022.

### E.    The Defendant's Motion to Vacate the Settlement Agreement Order and the Judgment

On November 7, 2023, one year after the entry of the Settlement Agreement Order and the Judgment, the Defendant, proceeding *pro se*, filed the Rule 60(b) Motion. [AP Dkt. No. 108]. The Rule 60(b) Motion was opposed by the Plaintiff, which included a memorandum of law [AP Dkt. No. 125], the Declaration of Ricardo Mier y Teran (the Plaintiff's counsel in Mexico City) [AP Dkt. No. 127], the Second Corrected Declaration of Gabriel Hertzberg [AP Dkt. No. 132], the Declaration of Gabriel Hertzberg [AP Dkt. No. 147], and a letter from the Plaintiff's counsel regarding a final decision from the Argentine court dismissing the criminal complaint commenced by the Defendant against the Plaintiff and his counsel [AP Dkt. No. 148]. Additional papers relating to the Rule 60(b) Motion were filed by the Defendant in further support of his motion and in response to the Plaintiff's opposition. [AP Dkt. Nos. 137, 138, 139, 140]. The Court heard oral argument on the Rule 60(b) Motion at which Mr. Molina appeared *pro se* and the Plaintiff appeared by counsel.

The Defendant bases his request for relief on Rules 60(b)(2), (3), and (6). In short, the Defendant contends that the Settlement Agreement and the Judgment were entered under circumstances involving duress, demonstrated by his arrest and detention in Argentina, and that the settlement was coerced and a "forced act of survival" on the Defendant's part. *See generally* Rule 60(b) Motion. He further contends that the Plaintiff's counsel, Mr. Hertzberg, was allegedly aware that the Plaintiff's accusations in the Mexico Complaint were false (according to the Defendant) but used the Defendant's situation (i.e., his arrest and detention) to obtain a favorable settlement for the Plaintiff. *See generally id*. The Defendant also argues that a ruling from the Argentine court (the "Argentine Ruling") should be considered newly discovered evidence that warrants the relief sought in the Rule 60(b) Motion, and that he was "legally impeded" from informing the Court about the investigation underlying the Argentine

Ruling. *See generally id*. Lastly, the Defendant argues that the imposition of a $6.88 million judgment was egregious and epitomized extreme and undue hardship, especially considering his bankruptcy filing and the circumstances he encountered. *See generally id*.

In his opposition, the Plaintiff argues that the Rule 60(b) Motion must be denied for the following reasons. First, the Defendant cannot prevail under Rule 60(b)(3) because he failed to establish clear and convincing evidence of duress and that there was no evidence of a wrongful threat to coerce settlement. Rather, the Defendant was the party who initiated settlement discussions and was represented by legal counsel. Second, the Defendant cannot prevail under Rule 60(b)(2) because the Argentine Ruling arose about one year after the entry of the Settlement Agreement Order and Judgment and thus is not newly discovered evidence that existed at the time the Settlement Agreement Order and Judgment were entered. Lastly, the Plaintiff maintains that the Defendant cannot prevail under the catch-all provision of Rule 60(b)(6) because he failed to establish an extreme and undue hardship and merely reargues the very same points he previously made in support of his request for relief under Rule 60(b)(2) and (3). *See generally* Plaintiff's MOL.[13]

In response, the Defendant countered that, among other things, duress is not negated merely because he initiated settlement discussions, and that duress may arise from implicit threats. He further argued that while the Argentine Ruling is not entirely new, the ruling "substantiates and confirms" his prior allegations. Lastly, he argued that his request for relief under Rule 60(b)(6) is a "desperate cry for justice" from the "unconscionable $6.8 million

---

[13] Citations to "Plaintiff's MOL" refer to the Memorandum *of Law of Plaintiff Jack Landsmanas Stern in Opposition to the Motion of Defendant Carlos Javier Molina to Reopen Case and for Relief from Judgment Under Rule 60(b)(2), (b)(3), and (b)(6)* filed on December 8, 2023. [AP Dkt. No. 125].

settlement" that is "an agreement poisoned by coercion and injustice." *See generally* Defendant's Corrected Response.[14]

## II.    Discussion

### A.    The Rule 60(b) Motion

The Defendant did not appeal the Settlement Agreement Order, nor did he appeal or move to alter or amend the Judgment, and the time do so has long passed.[15] Yet, despite his having failed to timely file an appeal or move under Rule 59 or otherwise challenge the order and judgment to which he expressly consented, the Defendant now moves to set aside the Settlement Agreement Order and the Judgment under Rule 60(b).

The Court has construed the arguments in the Rule 60(b) Motion in the light most favorable to the Defendant as a pro se movant. *See, e.g., In re Ditech Holding Corp.*, No. 19-10412, 2021 WL 2258291, at *1 (Bankr. S.D.N.Y. June 2, 2021) (Court applying an analysis under Rules 59 and 60 to pro se claimant's motion for rehearing and "construing the Motion in the light most favorable to the pro se Claimant to state the strongest argument that it suggests."). As explained below, to the extent Rule 60(b) relief might otherwise be available to the Defendant, the Defendant has failed to meet the heavy burden of proof on the specific elements of Rule 60(b) that he invokes. While it is true that there are motions to set aside a final order or judgment that meet the heavy burden under Rule 60(b), it is also true that there are those that do not. This is one that does not. The Court finds the Defendant's

---

[14] Citations to "Defendant's Corrected Response" refer to the *Corrected Defendant's Response to Plaintiff's Opposition to Motion to Reopen Case and for Relief from Judgment Under Rule 60* filed on December 18, 2023. [AP Dkt. No. 140].

[15] Bankruptcy Rule 8002(a) provides that "[t]he notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from. FED. R. BANKR. P. 8002(a). Bankruptcy Rule 9023 makes Rule 59 applicable to cases under the Bankruptcy Code and provides that "[a] motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment." FED. R. BANKR. P. 9023.

arguments unpersuasive and without merit. He has not met the exacting standard necessary to set aside the Settlement Agreement Order and the Judgment.

Rule 60(b) provides that the Court may relieve a party from a final judgment, order or proceeding due to:

> (1)    mistake, inadvertence, surprise, or excusable neglect;
> (2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party,
> (4)    the judgment is void;
> (5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6)    any other reason that justifies relief.

FED. R. CIV. P. 60(b).

"A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (although Rule 60(b) "should be broadly construed to do substantial justice [,] . . . final judgments should not be lightly reopened . . . . Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances."). "Courts typically require that the evidence in support of the motion for relief [under Rule 60(b)] be 'highly convincing' that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties." *Playboy Enters. Int'l, Inc. v. On Line Ent., Inc.*, No. CV 00-6618, 2004 WL 626807, at *9 (E.D.N.Y. Mar. 29, 2004, as amended Apr. 1, 2004) (quoting *Jedrejcic v. Croatian Olympic Comm.*, 190 F.R.D. 60, 77 (E.D.N.Y. 1999)) (quotation marks and citations omitted), *aff'd*, 135 F. App'x 479 (2d Cir. 2005). "Pro se litigants are not excused from the requirement that they produce highly convincing evidence to support a Rule 60(b) motion." *Toriola v. FJC*

*Sec. Servs. Inc.*, No. 13-CV-5142, 2017 WL 819483, at *4 (E.D.N.Y. Mar. 1, 2017) (quotation marks and citations omitted).

"The burden of proof is on the party seeking relief from the judgment." *Int'l. Bhd. of Teamsters,* 247 F.3d at 391. Moreover, as relevant here and as noted above, "[t]he heavy burden for securing relief from final judgments applies to pro se litigants as well as those represented by counsel." *Toriola*, 2017 WL 819483, at *4. Whether a motion for relief under Rule 60(b) should be granted is subject to the sound discretion of the court. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012); *In re Taub*, 421 B.R. 37, 42 (Bankr. E.D.N.Y. 2009). "In no circumstance . . . may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in a timely fashion." *Stevens*, 676 F.3d at 67.

Courts recognize "[a]s a general matter, there is a strong interest in the finality of judgment, especially when the parties have entered into a settlement agreement." *Playboy Enters. Int'l*, 2004 WL 626807, at *9 (citing *Nemaizer*, 793 F.2d at 61); *see Collick v. United States*, 552 F. Supp. 2d 349, 352 (E.D.N.Y. 2008) ("Settlement agreements to end litigation are strongly favored by courts and are not lightly cast aside."). "When the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits . . . the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost, and failed to appeal." *Nemaizer*, 793 F.2d at 63. In other words, "[w]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994); *Rand Int'l Leisure Prods., Ltd. v. Teksource, L.C.*, No. 97-cv-0319, 1998 WL 372356, at *1 (E.D.N.Y. July 2, 1998) ("A movant's burden is even more formidable where the movant has made a deliberate choice to enter into a settlement agreement as opposed to having litigated the case on the merits and lost."); *see also Humbles v. Reuters*

*Am., Inc.*, Nos. 05-CV-4895, 02-CV-60, 2006 WL 2547069, at *5 (E.D.N.Y. Aug. 31, 2006) ("In considering the finality of judgments, Rule 60(b) should not be employed simply to relieve a party from a voluntary and deliberate choice that later turns out to be unfortunate."). "Buyer's remorse is insufficient to vacate a stipulation of settlement even where the party is a pro se litigant." *Francis v. Excelsior College*, No. 04-CV-656, 2017 WL 2399483, at *5 (N.D.N.Y. May 8, 2017) (emphasis omitted).

With these legal principles in mind, the Court now addresses the Defendant's arguments that the Settlement Agreement Order and the Judgment must be vacated under Rules 60(b)(2), (b)(3) and (b)(6). The Court first considers the timeliness of the Rule 60(b) Motion and then addresses each argument in turn below.

### 1.    Timeliness of Rule 60(b) Motion

As an initial matter, "[t]imeliness is a threshold issue under Rule 60." *Taub*, 421 B.R. at 42. Rule 60(c)(1) provides that motions seeking relief under Rule 60(b) "must be made within a reasonable time" and more specifically requires that if relief is sought under Rules 60(b)(1), (b)(2), and (b)(3) then such motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1).

As the Defendant moves in part under Rules 60(b)(2) and (b)(3), the Court must determine in the first instance if the Defendant timely moved with respect to the relief sought under Rules 60(b)(2) and (b)(3). Each of the Settlement Agreement Order and the Judgment was entered on November 7, 2022. The Defendant's Rule 60(b) Motion was filed on November 7, 2023, and thus falls within the one-year limitation period.

Notwithstanding the filing of the Rule 60(b) Motion on the last day of the one-year deadline, the one-year deadline is "merely an outer limit." *Gonzales v. Nat'l Westminster Bank PLC*, No. 11 Civ. 1435, 2013 WL 6978874, at *5 (S.D.N.Y. Nov. 18, 2013); *see also LaFortune v. Hertz Corp.*, No. 98 Civ. 9154, 2000 WL 281779, at *2 (S.D.N.Y. Mar. 13, 2000)

("But Rule 60(b) requires in all events that such a motion be made within a reasonable time.") (internal quotation marks omitted). Indeed, "the motion may be rejected as untimely if not made within a reasonable time even though the one-year period has not expired." *Gonzales*, 2013 WL 6978874, at *5; *see also Geo-Group Commc'ns, Inc. v. Chopra*, No. 15 Civ. 1756, 2023 WL 6235160, at *8 (S.D.N.Y. Sept. 26, 2023) ("Two related questions about timeliness pursuant to Rule 60(c) must be resolved" - whether the motion is time-barred by the one-year cutoff and if not time-barred, then whether the motion was made within a reasonable time).

Additionally, the movant faces an increasing burden to demonstrate the reasonableness for the delay in time as the deadline draws closer. *See Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne De Navigation*, 605 F.2d 648, 656 (2d Cir. 1979) ("Although the fact that a motion was made barely within the one-year time limit gives the court the power to entertain it, as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'"). In that regard, what is considered reasonable is "based on 'the particular circumstances of the case,' taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Thai-Lao Lignite Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (quoting *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983)); *see also Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986) ("[t]here is no hard and fast rule as to how much time is reasonable . . . ."); *see, e.g., Barrett v. Local 804 Union (IBT)*, No. 18-CV-2046, 2023 WL 4551686, at *5 (E.D.N.Y. July 14, 2023) (finding motion was not filed within a reasonable time because it was filed "ten months after he allegedly discovered new evidence purporting to require reopening of this matter and reconsideration of the Court's [decision]."); *Wyche v. Advanced Drainage Sys., Inc.*, 332 F.R.D. 109, 116 (S.D.N.Y. 2019) (finding the failure to give

an explanation for the four and a half months from the discovery of new evidence to the filing of the Rule 60(b)(2) motion was unreasonable); *Gonzales*, 2013 WL 6978874, at *6 ("Plaintiffs do not explain why it took them approximately six months from DeRosa's deposition in August 2012 to file their motion in February 2013. Without more, that delay is unreasonable and renders Plaintiff's Rule 60(b) motion untimely."); *United States v. $350,000*, No. 92 CV 4011, 1996 WL 706821, at *2 (E.D.N.Y. Dec. 6, 1996) (finding unexplained eight-month delay to filing Rule 60(b) motion an unreasonable time); *Sasso v. M. Fine Lumber Co.*, 144 F.R.D. 185, 188-89 (E.D.N.Y. Oct. 13, 1992) (finding no reasonableness from nine-month delay); *Gould Ent. Corp. v. Bodo*, 107 F.R.D. 308, 311 (S.D.N.Y. 1985) (giving movant benefit of doubt that he did not receive notice of default judgment until nearly seven months after the notice but stating "the fact remains that he waited approximately five months before moving to vacate" and which filing happened just two days shy of the one-year deadline, and because there was no explanation for the delay, "[t]his unexcused delay is in itself adequate basis for denying the motion."); *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535, (S.D.N.Y. 1985) (finding filing of Rule 60(b) motion two-months after movant received notice of default judgment to be unreasonable under circumstances).

As previously mentioned, the Rule 60(b) Motion was filed on the last possible day to be deemed "timely" for purposes of Rule 60(c)(1). The Defendant's explanation for the delay in filing was that he was not able to leave Argentina and return to the United States until July 2023 and that it took some time for him to prepare his Rule 60(b) Motion because he was proceeding *pro se* after the entry of the Settlement Agreement Order and the Judgment. *See* Defendant's Corrected Response, at p. 3. The Defendant filed the Rule 60(b) Motion on November 7, 2023, approximately four months later. Interestingly, while the Defendant stressed the time it took for him to return to the United States as the reason for his delay in seeking relief under Rule 60(b), the Defendant was nevertheless able to file a complaint in

Argentina against the Plaintiff and Mr. Hertzberg on or about February 14, 2023 (the "Argentine Complaint"). *See Declaration of Santiago Fontán Balestra*, at ¶ 2 [AP Dkt. No. 127-4].

If the Court accepts July 14, 2023 as the operative date from which to determine the reasonableness of the filing of the Rule 60(b) Motion, there is no dispute that the Defendant filed the Rule 60(b) Motion approximately four months after his return to the United States. Thus, the question is whether a lapse of four months under the circumstances presented by the Defendant is reasonable. Here, the Defendant claims that any perceived delay was occasioned by the circumstances of his arrest and detention in a foreign country until July 2023. *See* Defendant's Corrected Response, at p. 8. Yet, as noted above, despite his arrest and detention, the Defendant was able to file a criminal complaint in Argentina in February 2023 while under house arrest at an apartment provided by one of his then attorneys. While this does dampen, and possibly undercuts, his argument that the time it took for him to file the Rule 60(b) Motion after his return to the United States was reasonable,[16] the Court concludes that the Defendant adequately  explained the reason for any perceived delay in filing the Rule 60(b) Motion.

Accordingly, the Court finds the Rule 60(b) Motion was filed within the one-year limitation and within a reasonable time for purposes of Rule 60(c)(1).

### 2.    Relief under Rule 60(b)

Having determined that the Rule 60(b) Motion was timely and filed within a reasonable time, the Court will now address whether the Defendant is entitled to relief under Rules 60(b)(2), (b)(3) and/or (b)(6).

---

[16] The Defendant also contends that "[t]he proximity of this motion to the one-year deadline underscores not a hesitance to act but a steadfast persistence to procure all necessary evidence and testimonials that fortify the grounds for relief sought herein." Rule 60(b) Motion, at pp. 3-4.

### a.    Rule 60(b)(2)

The movant has an "onerous standard to meet." *Int'l. Bhd. of Teamsters,* 247 F.3d at 392. To prevail on the grounds of newly discovered evidence under Rule 60(b)(2), the movant must establish that:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding; (2) the movant must have been justifiably ignorant of them despite due diligence; (3) the evidence must be admissible and of such importance that it probably would have changed the outcome; and (4) the evidence must not be merely cumulative or impeaching.

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 146-47 (2d Cir. 2020) (quoting *Int'l Bhd. of Teamsters*, 247 F.3d at 392 (quotation marks omitted)). To qualify as "new evidence" under Rule 60(b)(2), the movant must present evidence that is "truly newly discovered or could not have been found by due diligence." *Space Hunters, Inc. v. United States*, 500 F. App'x 76, 81 (2d Cir. 2012) (citing *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983)).

The purported "new evidence" that the Defendant relies upon is the Argentine Ruling which relates directly to the Defendant's Argentine Complaint. As discussed above, there are four criteria that must be met by the Defendant. For the reasons to follow, the Court finds that the Defendant has not met his burden and thus the Argentine Ruling does not constitute "new evidence" for purposes of Rule 60(b)(2).

The Plaintiff argues that the Argentine Ruling is outside the scope of Rule 60(b)(2) because the Argentine Ruling was entered by the Argentine court on September 19, 2023, approximately ten months *after* the Settlement Agreement Order and the Judgment was entered by this Court. [AP Dkt. No. 108-1; as corrected at AP Dkt. No. 123-1]. In countering this argument, the Defendant does not focus on the fact that the Argentine Ruling was entered after the Settlement Agreement Order and the Judgment were entered by the Court;

rather, he contends that the Argentine Ruling "should be considered newly discovered in its capacity to transform prior claims from hypothetical threats to a substantial reality" and that "[i]t is this transition of evidence from the theoretical to the actual that I believe justifies its consideration under Rule 60(b)(2), warranting a reevaluation of the judgment in light of these developments." Defendant's Corrected Response, at p. 9.

The Court finds the Defendant's argument unavailing. The Argentine Ruling does not qualify as "newly discovered" evidence because the Argentine Ruling was entered months after the entry of the Settlement Agreement Order and the Judgment. Even if the Court were to accept the Defendant's argument that the Argentine Ruling should be considered because it relates to facts that preceded the Settlement Agreement Order and the Judgment, and thus "was of facts that existed at the time," the Court would still find that the Argentine Ruling fails to qualify as "newly discovered" evidence for the following reasons.

The Defendant likens the Argentine Ruling to the proverbial "smoking gun." But the Defendant's reliance on the Argentine Ruling is fatally flawed. On May 30, 2024, the Argentine court issued a decision rejecting the Defendant's arguments and dismissed his complaint on the merits, with prejudice (the "Argentine Decision"). [AP Dkt. No. 147-1 (as translated to English at pp. 36-53)]. Notably, it appears that the Defendant did not provide relevant documents to the Argentine court (e.g., the Joint Motion to Dismiss and the supporting declarations from the Defendant and Mr. Ciardi). *See* Argentine Decision, at p. 53. The relevance of the Joint Motion to Dismiss and the supporting declarations to the Argentine court is evidenced by the following statement from the Argentine Decision: "Furthermore, the documents subsequently provided by the defense of Landsmanas Stern (joint motion and attached statements of Molina Gil and Albert Ciardi) were not available at the time, from where it can be concluded – as exposed throughout this decision – that he had

no plausible reason to file the complaint that led to the proceeding in this investigation[.]"

*Id*. The Argentine court also concluded:

> In this case, there are neither objective nor subjective elements described, since the circumstances surrounding the facts prove there was no pressure or intimidation by the accused to cause the agreement to be executed. On the contrary, an open negotiation, initiated and promoted by Molina Gil occurred who, once apprehended in the Argentine Republic by the criminal proceeding against him carried out in the City of Mexico, started an exchange of e-mails with Gabriel Hertzberg, attorney of Landsmanas Stern, in which mails he clearly evidenced his desire to reach an economic agreement.

*Id*. at p. 42. As such, the Court finds that the Argentine Ruling is not outcome-determinative. The Defendant's contention that the Argentine Ruling is highly relevant as dispositive evidence simply loses all steam and force in view of the Argentine Decision.

Even if the Argentine court did not issue the Argentine Decision, this Court would still find that the Argentine Ruling fails as "newly discovered" evidence sufficient to vacate the Settlement Agreement Order and the Judgment. The Defendant consistently ignores or downplays the undisputed fact that the parties jointly moved to resolve this adversary proceeding via a negotiated settlement in which the Defendant was represented by counsel.

There is, and can be no dispute, that the Defendant was an active proponent seeking the entry of the Settlement Agreement Order and the Judgment. He submitted his own declaration in support of the joint motion seeking dismissal of the adversary proceeding pursuant to the settlement agreement between the Plaintiff and himself. *See generally* Molina Declaration. In the Molina Declaration, the Defendant unambiguously states, among other things, that he was represented by legal counsel with respect to the Settlement Agreement, that there were back-and-forth negotiations over many weeks that provided material economic concessions by the Plaintiff and himself, and that he believed the Settlement Agreement is fair to the Plaintiff and himself. *Id*. at ¶¶ 5-6. All the Defendant's statements in the Molinas Declaration were expressly made under penalty of perjury.

Albert Ciardi, the Defendant's legal counsel with respect to the Settlement Agreement, likewise submitted a declaration sworn under penalty of perjury. *See generally* Ciardi Declaration. Mr. Ciardi confirmed that he provided legal counsel to the Defendant in connection with the Settlement Agreement, and that the underlying settlement discussions were conducted in good faith and at arm's-length. *Id*. at ¶ 4.

Further, the terms of the Settlement Agreement refute the Defendant's arguments in the Rule 60(b) Motion. The Settlement Agreement clearly specifies that the settlement was negotiated by the parties in good faith and at arm's-length. Settlement Agreement, at p. 1. The Settlement Agreement clearly specifies that the Defendant, by executing the Settlement Agreement, represented that "he is under *no duress, coercion, or compulsion* of any kind whatsoever but, instead, enters into this Agreement *willfully, voluntarily, and having been fully informed* of the premises and concluded that the terms hereof are in his own best interests." *Id*. at ¶ 12.c(2) (emphasis added); *id*. at ¶ 14 ("The Parties have entered into this Agreement freely, voluntarily, and without duress of any kind or nature, after having consulted with professionals of their choice."). The Settlement Agreement also makes clear that the Defendant relied solely upon his own judgment and that of his counsel's legal advice and recommendations. *Id*. at ¶ 12.c(1). The Settlement Agreement also makes clear that the "Defendant consents to the entry of a judgment against him determining that the amount of $6,880,000, inclusive of costs and interest, shall be non-dischargeable in Defendant's Bankruptcy Case and any other bankruptcy case that may ever be filed by or against Defendant." *Id*. at ¶ 2.

In addition, the Joint Motion to Dismiss echoes many of the statements in the Molina Declaration and Ciardi Declaration. The Joint Motion to Dismiss states that the Settlement Agreement globally resolved a two-party dispute and expressly noted critical issues resolved

by the parties including: (1) a reduction in the amount of the Plaintiff's claim from approximately $9.5 million down to approximately $6.88 million, with such reduced claim being non-dischargeable; (2) the Plaintiff's dismissal of the Landsmanas Stern Action with prejudice; and (3) the Plaintiff's undertaking to withdraw the complaint he filed in Mexico that gave rise to the Mexico Action. *See generally* Joint Motion to Dismiss.

All the foregoing strongly undercuts the allegations of misconduct that the Defendant wants this Court to now use as grounds to grant the relief sought in the Rule 60(b) Motion. The record is abundantly clear that the Settlement Agreement and the Judgment were fully endorsed by the Defendant.

Further, no concerns, questions or issues regarding the Settlement Agreement were raised by the Defendant with the Court prior to entry of the Settlement Agreement Order and the Judgment. At the time the Joint Motion to Dismiss was heard and considered by the Court, the Defendant did not claim he was at a disadvantage during the settlement negotiations. He did not express any reservation about his decision to enter into the settlement, nor did he claim that he was compelled to accede to any settlement demand by the Plaintiff. He, himself, initiated the settlement talks culminating in his zealously advocating for entry of the Settlement Agreement Order and the Judgment and was not heard to complain about its terms until a year later when he filed the Rule 60(b) Motion.

Further, the Defendant's affirmative entry into the Settlement Agreement definitively put an end to all the controversies, issues and disputes between the parties. *See* Settlement Agreement, at ¶ 12.a ("[T]his Agreement constitutes a compromise and settlement of disputed claims, and is not intended, nor shall be construed, as an admission by any Party of liability or responsibility to the other Party on any basis. This Agreement is a compromise and settlement of disputed claims and is the product of arm's-length negotiations. No admission of liability is made by any Party to this Agreement."); *id*. at ¶ 12.c (representation

of "no duress, coercion, or compulsion of any kind whatsoever" and entered into "willfully, voluntarily, and having been fully informed of the premises ...."); *id*. at p. 1 ("the terms of this Agreement were negotiated in good faith at arm's length ....").

Lastly, the Court additionally finds the Argentine Ruling does not constitute "newly discovered evidence" for purposes of Rule 60(b)(2) because the Defendant, himself, recognizes that it is cumulative and not "new" stating that "[t]he evidence that has come to light, *rather than being entirely new, substantiates and confirms the allegations I have persistently made* about the Plaintiff's coercive tactics aimed at extorting money from me under the threat of legal and personal harm." Defendant's Corrected Response, at p. 8 (emphasis added). It bears repeating that at no time prior to, or one year after, the entry of the Settlement Agreement Order and Judgment did the Defendant complain of any coercive tactics by the Plaintiff in extracting the settlement which again the Court emphasizes was initiated by the Defendant.

For all of the forgoing reasons, the Court finds that the Defendant has failed to meet his burden to vacate the Settlement Agreement Order and the Judgment pursuant to Rule 60(b)(2).

### b.    Rule 60(b)(3)

To prevail under Rule 60(b)(3), the movant "must prove by clear and convincing evidence" that the order or judgment from which relief is sought was "procured by fraud, misrepresentation or other misconduct." *In re Waugh*, 367 B.R. 361, 367 (Bankr. E.D.N.Y. 2007) (citing *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989); *see Thai-Lao Lignite Co.*, 864 F.3d at 182 ("The burden is on the moving party to demonstrate that it is entitled to relief, and courts '[g]enerally ... require that the evidence in support of the motion to vacate a final judgment be highly convincing.'") (quoting *Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987)) (internal quotation marks omitted). "To meet this high burden, the [movant] must do more than make 'conclusory allegations of fraud' and must

show that the alleged fraud, misrepresentation, or other misconduct was 'material to the outcome.'" *In re Waugh*, 367 B.R. at 367 (quoting *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 174 (Bankr. S.D.N.Y. 2004)). "A party may not use Rule 60(b)(3) to relitigate the merits of the order from which he seeks relief." *In re Sanders*, 408 B.R. 25, 33 (Bankr. E.D.N.Y. 2009) (citing *Fleming*, 865 F.2d at 484).

As discussed above, the movant's burden to vacate an order approving a settlement is high. Indeed, "[b]ankruptcy courts in the Second Circuit have placed a heavy burden upon a party seeking to vacate a final order approving a settlement." *Engineered Devices Corp. v. Carlton Concrete Constr. (In re Carlton Concrete Corp.)*, No. 08-CV-242, 2008 WL 4443233, at *5 (E.D.N.Y. Sept. 26, 2008) (listing cases). In the Second Circuit, a settlement agreement is construed as a contract. *See Goldman v. Comm'r of Internal Revenue*, 39 F.3d 402, 405 (2d Cir. 1994) ("As the settlement agreement constituted a contract, general principles of contract law must govern its interpretation."); *Tolkin v. Pergament*, No. 11CV 3467, 2012 WL 1132475, at *9 (E.D.N.Y. Mar. 31, 2012) ("A settlement agreement is a contract that is interpreted according to general principles of contract law.") (quoting *Powell v. Omnicom, BBDO/PHD*, 497 F.3d 124, 128 (2d Cir. 2007) (quotation marks omitted). Under the Settlement Agreement, the parties expressly agreed to a choice of law provision, which provides "that in any dispute among them arising from or relating to this Agreement, the Agreement shall be governed by, and shall be construed in accordance with, the internal laws of the State of New York without regard to its conflicts of laws jurisprudence." Settlement Agreement, at ¶ 12.e.

With New York law governing the Settlement Agreement, "[a] court may vacate a settlement agreement only when there has been a showing of fraud, collusion, mistake, or duress or when the agreement is unconscionable, contrary to public policy, or ambiguous."

*Ogbolu v. Trustees of Columbia Univ.*, No. 22-419, 2023 WL 2579044, at *2 (2d Cir. Mar. 21, 2023) (citing *McCoy v. Feinman*, 99 N.Y.2d 295, 302 (2002)); *see Jordan v. Verizon Corp.*, No. 04-5581CV, 2005 WL 3116750, at *2 (2d Cir. Nov. 22, 2005) ("A settlement agreement is a contract that can only be invalidated upon a showing of fraud, duress, illegality, or mutual mistake."); *see also Hallock v. State*, 64 N.Y.2d 224, 230 (N.Y. 1984) ("Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake, or accident, will a party be relieved from the consequences of a stipulation made during litigation.").

For the movant to successfully vacate a settlement agreement based on duress, it must be "established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will." *Doe. v. Kogut*, 759 F. App'x 77, 81 (2d Cir. 2019) (citing *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632 (2d Cir. 1972)); *see Dimino v. Fisher (In re Dimino)*, 429 B.R. 408, 418 (Bankr. E.D.N.Y. 2010) (holding a "contract may be voided as a result of duress if the party claiming duress can prove that he was 'involuntarily forced' to act because of 'a wrongful threat precluding the exercise of ... free will.'") (quoting *Warnaco, Inc. v. Farkas*, 872 F.2d 539, 546 (2d Cir. 1989)); *see also McIntosh v. Consol. Edison Co. of New York, Inc.*, No. 82065, 96 CIV 3624, 1999 WL 151102, at *2 (S.D.N.Y. Mar. 19, 1999) (explaining there are three circumstances of duress to void a contract – duress by physical compulsion, duress by threat, or duress by undue influence); *Feuer v. Darkanot*, 36 A.D.3d 753, 753-54 (2d Dep't 2007) ("A party seeking to vacate a stipulation by asserting duress must demonstrate that 'threats of an unlawful act compelled his or her performance of an act which he or she had the legal right to abstain from performing.'") (quoting *Polito v. Polito*, 121 A.D.2d 614, 614-15 (2d Dep't 1986)).

General contentions that a party felt pressured is not sufficient. *See, e.g., Duran v. J.C. Refinishing Contracting Corp.*, 421 F. App'x 20, 21-22 (2d Cir. 2011) (citing cases and

finding unsubstantiated argument by movant that he was pressured to settle by the court, even if credited, was insufficient to establish duress claim); *Playboy Enters. Int'l*, 2004 WL 626807, at *6-8 (finding burden was not met by movant's contention that the Court's strong admonition of the movant's counsel outside the presence of the jury resulted in the movant's position being weakened thereby causing him to be coerced and enter into a settlement agreement under duress). Nor is there duress simply because of a party's bargaining position. *See Davis v. M&M Dev., LLC (In re MBM Ent., LLC)*, 531 B.R. 363, 410 (Bankr. S.D.N.Y. 2015) ("[D]uress does not exist based only on the existence of financial pressure and unequal bargaining position or on a lack of good faith in performing a contract."); *Playboy Enters. Int'l*, 2004 WL 626807, at *7 ("Duress may not be found merely from the existence of a difficult bargaining position or the pressure of financial circumstances.") (citing *McIntosh*, 1999 WL 151102, at *2).

Here, the Defendant contends that vacating the Court's approval of the Settlement Agreement is warranted under Rule 60(b)(3) based on allegations of duress. According to the Defendant, the Settlement Agreement "was reached amidst undue pressure" and that the underlying settlement is "inherently void" as a result. Rule 60(b) Motion, at pp. 2-3. The Court disagrees and finds that the Defendant failed to satisfy the hefty burden of vacating the Settlement Agreement Order under Rule 60(b)(3).

### i.    The Defendant Failed to Establish Duress from a Wrongful Threat that Precluded the Exercise of Free Will

Based on the record, the Court finds that the Defendant failed in two critical respects to invalidate the Settlement Agreement (and the Judgment) because of duress. First, the Defendant failed to establish there was a wrongful threat. The Defendant contends the filing of a criminal complaint in Mexico and subsequent detention under house arrest pending the outcome of an extradition process should be considered a wrongful threat, but such contention

is insufficient. "[A] threat to resort to civil litigation or legal remedies does not constitute duress, since '[i]t is never duress to threaten to do what one has a legal right to do.'" *MBM Ent.*, 531 B.R. at 410 (quoting *Citibank, Nat'l Ass'n v. London*, 526 F. Supp. 793, 803 (S.D. Tex. 1981)) (applying New York law); *see United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 89 (2d Cir. 2011) ("[U]nder New York law, the threatened exercise of a legal right cannot constitute duress...."). Here, there is nothing in the record to support a finding that initiation of the Mexico Complaint almost a year before the date the Defendant filed his chapter 7 bankruptcy petition constitutes a wrongful threat designed to force the Defendant to settle this postpetition adversary proceeding.

Second, assuming a wrongful threat was demonstrated, the Defendant must also show that such wrongful threat had the effect of precluding the exercise of his free will. In that regard, the Defendant failed to make the required showing. The record does not support a finding that he was precluded from exercising his free will in entering into the Settlement Agreement. *See, e.g., Nisselson v. Softbank AM Corp. (In re Marketxt Holdings Corp.)*, 361 B.R. 369, 401 (Bankr. S.D.N.Y. 2007) ("Although there is no line of absolute demarcation between a threat that deprives a party of its free will as opposed to a threat that portends some lesser degree of harm, any finding of duress at least must reflect a conviction that one party to a transaction has been so improperly imposed upon by the other that a court should intervene.") (internal quotation marks and citation omitted). Here, the Defendant's actions demonstrate that he acted upon his own free will through active participation in settlement negotiations.

As discussed above, the Defendant resolutely argued in favor of the Settlement Agreement and his unbridled determination in pursuing approval of its terms undermines any notion that his entry into the Settlement Agreement was under duress, coercion or other wrongful conduct. By executing the Settlement Agreement, the Defendant definitively and

affirmatively represented that "he is under *no duress, coercion, or compulsion* of any kind whatsoever but, instead, *enters into this Agreement willfully, voluntarily*[.]" Settlement Agreement, at ¶ 12.c(2) (emphasis added). The Settlement Agreement further provides that "[t]he Parties have entered into this Agreement *freely, voluntarily, and without duress* of any kind or nature, after having consulted with professionals of their choice."). *Id*. at ¶ 14 (emphasis added). The Defendant also represented that before he signed the Settlement Agreement he fully understood each of the terms and conditions therein. *Id*. Additionally, the Defendant declared under penalty of perjury that the Settlement Agreement is "fair" to him. Molina Declaration, at ¶ 6.

Next, once again it bears repeating that the Defendant contacted the Plaintiff's counsel regarding the Defendant's request to settle. *See* Rule 60(b) Motion, Exhibit F at pp. 13-14 (email dated Oct. 6, 2022, at 12:36 pm). Before settlement discussions proceeded, however, the Plaintiff's counsel expressly informed the Defendant in writing that the Defendant (who was appearing *pro se* at the time) needed to have legal counsel for settlement negotiations, stating:

> [Y]ou will need to engage Mexican counsel to represent you in settlement negotiations because the Mexico City Attorney General will be a party to any agreement that results in dismissal of the Mexican complaint, and you will need local counsel in Mexico to implement the agreement. You will also need to engage US counsel to advise you regarding dismissal of the adversary proceeding, and that counsel will sign off on any settlement. Obviously given your email below we are concerned that you are manufacturing a defense of duress and want to be certain you enter any agreement voluntarily, on your own accord and free will, and with proper legal advice.

*Id*. at p. 14 (email dated Oct. 6, 2022, at 3:59 pm). The Defendant thereafter re-engaged Mr. Ciardi as his attorney for purposes of settlement discussions and documentation. That the Plaintiff's counsel conditioned further settlement discussions on the Defendant's engagement of legal counsel of the Defendant's own choice supported a setting whereby the Defendant

could exercise his free will. Indeed, Mr. Ciardi, the Defendant's attorney, confirmed that the settlement negotiations were conducted in good faith and at arm's-length and advocated for the approval of the Settlement Agreement at the earliest practicable time. Ciardi Declaration, at ¶¶ 4-5. Mr. Ciardi not only provided a separate declaration in support of the Settlement Agreement, but he also signed the Settlement Agreement, which further supports the conclusion that there was no duress involved. *See, e.g., Donaldson v. N.Y.C. Dep't of Educ.*, No. 09-cv-2816, 2010 WL 935560, at*1 (E.D.N.Y. Mar. 12, 2010) (District Court noting that the State Court Judge had dismissed the litigant's claims of duress and coercion relating to his Article 78 petition to vacate a settlement agreement and letter of resignation because "the agreement states that he entered into the agreement 'freely, knowingly and openly, without coercion or duress' and because his attorney signed the agreement as well.").

Third, the Settlement Agreement was the product of back-and-forth negotiations spanning several weeks. *See* Molina Declaration, at ¶ 5 ("The settlement discussions resulting in the Settlement Agreement were conducted over several weeks, and the back-and-forth negotiations included material economic concessions being made both by Plaintiff and by me."); *see also* Ciardi Declaration, at ¶ 4 ("The settlement discussions resulting in the Settlement Agreement were conducted in good faith and at arms'-length over several weeks, and the back-and-forth negotiations included material economic concessions being made both by Plaintiff and by Defendant."); Joint Motion to Dismiss, at ¶¶ 3, 20 ("conducted by both Parties in good faith and at arms' length"; "material economic concessions … over the course of the negotiations"; "negotiating the terms of the Settlement for several weeks").

That the parties' engaged in back-and-forth negotiations is especially relevant as it shows that the Defendant was engaged and actively participating in the negotiation of a settlement with the Plaintiff. *See, e.g.*, Rule 60(b) Motion, Exhibit F at p. 1 (email dated Oct. 17, 2022, at 6:20 pm) ("Carlos and I have negotiated the main deal points over the last couple

of days ….”). In other words, this was not a one-sided affair in which the Defendant acted involuntarily and was forced to agree to every term and condition the Plaintiff wanted.

Indeed, the Defendant not only initiated settlement discussions, but he also reviewed the terms proposed by the Plaintiff and made several counteroffers. Even more, the Defendant admitted that he took his time evaluating the consequences of the proposed settlement terms, explaining that “I needed to understand exactly what I was getting into. Talking to my wife, see what I was getting into, think it over.” Rule 60(b) Motion, Exhibit E at p. 1 (English transcription of conference call between the Defendant and Mr. Hertzberg) [AP Dkt. No. 115]; *see, e.g.*, *Interactive Edge, Inc. v. Martise*, No. 97 Civ. 3354, 1998 WL 35131, at *3-4 (S.D.N.Y. Jan. 30, 1998) (finding settlement agreement was “negotiated over a number of weeks … and involved concessions and compromises from both parties” and that there was no support from the record that pro se defendant signed the settlement agreement under duress for fear of criminal prosecution as he was advised by his attorney of a possibility of criminal prosecution for an alleged act by the defendant and that a settlement provided a way to avoid that possibility); *see also Best v. Schecter*, No. 12-CV-6142, 2018 WL 4635726, at *4 (E.D.N.Y. Feb. 22, 2018) (Report and Recommendation denying motion to strike a provision from the settlement agreement after applying a Rule 60(b) analysis and finding the pro se movant was not rushed, surprised or pressured into agreeing to terms, but rather had ample time to review and negotiate amendments and that movant participated actively and negotiated effectively, including the making of a counteroffer, and only accepted to execute agreement upon the inclusion of certain additional non-monetary terms that movant wanted), *adopted*, *Best v. Barbarotta*, No. 12-CV-6142, 2018 WL 3970886 (E.D.N.Y. Aug. 20, 2018), *aff'd*, 790 F. App'x 336 (2d Cir. 2020) (summary order). The Defendant benefitted from the back-and-forth negotiations because it resulted in material concessions in his favor. For example, the Plaintiff agreed to withdraw the Mexico Complaint to facilitate the Defendant's

return to the United States, agreed to a claim in a reduced amount (from approximately $9.5 million to $6.88 million), and agreed that if funds were received by the Plaintiff in connection with a related dispute involving a different party then such funds would be partially credited to the amount owed under the judgment (i.e., a potential reduction in the judgment amount). In all, the Court finds the Defendant's actions run contrary to his contention that he was precluded from exercising his free will in agreeing to the terms of the negotiated settlement.

Further, the Defendant presented no evidence to support the conclusion that there was no other choice for him but to settle. It is well-settled that a claim of duress is fatally deficient if the movant cannot establish that there was no other alternative available to the movant. *See, e.g., Bekhor v. Josephthal Group, Inc.*, No. 96 CIV. 4156, 2000 WL 1521198, at *3-4 (S.D.N.Y. Oct. 13, 2000) (finding no duress, even if there was "uneven bargaining position" and an "intimidating and hostile atmosphere" during negotiations, because movant "always had the alternative of refusing to settle … and pursuing his legal claims"); *Batac Dev. Corp. v. B & R Consultants Inc.*, No. 98 CIV. 721, 1999 WL 76873, at *3-4 (S.D.N.Y. Feb. 16, 1999) (finding no duress because while the negotiation was "heated, stressful and contentious" and the "atmosphere may have been intimidating" there was nothing threatening or that movant was in fear of actual physical harm, and the movant's "claim of duress is fatally deficient because [he] cannot establish that he was faced with no alternative but to sign"); *In re Dimino*, 429 B.R. at 418 (finding settlement was not made under duress because the debtor produced no evidence that his free will was affected such that it left him with only the option to settle, and that the debtor's agreement to pay a portion of the sale proceeds to satisfy a lien was a bargained-for-exchange – "[t]he mere fact that the Debtor felt pressure … does not, by itself, dictate a conclusion that the settlement is void as a product of duress.").

The Defendant has not offered any evidence that he did not have a choice but to agree to the Settlement Agreement. He could have elected to challenge the extradition, and the charges asserted against him. The Plaintiff's counsel also reminded the Defendant that he could fight the extradition and that he did not have to settle. The Defendant, of his own volition, chose the path to take and opted to settle this adversary proceeding. No evidence was presented that he was prevented from opposing the extradition and the Defendant has not offered any evidence that his free will was compromised. In the end, he opted to initiate and negotiate terms of a settlement. As such, the Defendant's claim of duress must be rejected for this additional reason.

### ii.    The Defendant Failed to Establish Threat of Physical Harm

The Defendant also appears to contend that threats that implicitly evoke a "pervasive fear of harm" or "threats of immediate harm" or "imminent threats to … safety" may satisfy a showing of duress. Defendant's Corrected Response, at p. 5. The Defendant however presented no evidence that the Plaintiff threatened him with personal harm in any way. Accordingly, the Court denies the Defendant's claim of duress premised on a threat (whether explicit or implicit) of physical harm.

### iii.    The Defendant Failed to Act Promptly to Repudiate

As a matter of law in the Second Circuit, the failure to promptly repudiate the contract will result in the party claiming duress to be "deemed to have ratified it." *VKK Corp. v. National Football League*, 244 F.3d 114, 122-23 (2d Cir. 2001)

> A party may ratify a contract or release entered into under duress by intentionally accepting benefits under the contract, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it, performing under it, or affirmatively acknowledging it.

*Twenty Miljam-350 IED Jammers*, 669 F.3d at 89 (quoting *VKK Corp.*, 244 F.3d at 123) (internal quotation marks omitted). "Delay precludes a contention that the contract was invalid on grounds of duress." *MBM Ent.*, 531 B.R. at 411. "A repudiation must be 'clear and unequivocal.'" *Grullon v. Delta Air Lines, Inc.*, No. 20-3207-cv, 2021 WL 6116784, at *3 (2d Cir. Dec. 27, 2021) (summary order) (quoting *Walton Mgmt., LLC v. Walton Apartments, LLC*, 298 A.D.2d 277, 278 (1st Dep't 2002)).

Even accepting as true the Defendant's contention that he signed the Settlement Agreement under duress, the Court finds that he failed to act promptly to repudiate the Settlement Agreement. *See Twenty Miljam-350 IED Jammers*, 669 F.3d at 89 ("[O]ne who would repudiate a contract procured by duress *must act or will be deemed to have elected to affirm it*.") (emphasis in original); *VKK Corp.*, 244 F.3d at 122 ("[T]he person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so.") (internal quotation marks and citation omitted).

There is nothing in the record to show that the Defendant repudiated the Settlement Agreement promptly. At a minimum, the Defendant did not repudiate, if at all, the Settlement Agreement until he filed his criminal complaint in Argentina against the Plaintiff and Mr. Hertzberg in February 2023. Thus, at least three months passed without the Defendant repudiating the Settlement Agreement. The Court finds that to be an untimely repudiation by the Defendant. *See, e.g.*, *Twenty Miljam-350 IED Jammers*, 669 F.3d at 91 (concluding that duress claim would fail even if sufficient evidence of duress was proffered because no attempt to repudiate was made until four months after stipulation was signed).

### iv.    The Defendant Ratified the Settlement Agreement

The Court also finds that the Defendant ratified the Settlement Agreement by accepting the benefits of the Settlement Agreement. The Defendant specifically stated an

"important benefit" of the Settlement Agreement is the requirement that the Plaintiff notify the Mexican Attorney General that he wishes to withdraw with prejudice the complaint (i.e., the Mexico Complaint) that he initiated. *See* Molina Declaration, at ¶ 4. In accordance with the terms of the Settlement Agreement, the Plaintiff (through counsel) dismissed the Mexico Complaint against the Defendant with prejudice on November 23, 2022. *See Declaration of Julia Raquel Quiroga Herrera*, at ¶ 9. [AP Dkt. No. 127-2]. The Defendant accepted the consequences of the Plaintiff's withdrawal of the Mexico Complaint without question and therefore ratified the Settlement Agreement. *See MBM Ent.*, 531 B.R. at 411 ("[A] party who accepts benefits under a contract, without challenging the legitimacy of the contract, has ratified the contract and is precluded from later seeking to undo it on grounds of duress."); *see also Fruchthandler v. Green*, 233 A.D.2d 214, 215 (1st Dep't 1996) ("Having accepted the benefits of the agreement before commencing this action, plaintiff, in effect ratified the release and is therefore barred from alleging economic duress in its execution.").

For all of the foregoing reasons, the Court finds that the Defendant failed to meet his burden to vacate the Settlement Agreement Order and the Judgment pursuant to Rule 60(b)(3).

### c.    Rule 60(b)(6)

Lastly, the Defendant seeks relief under the catch-all of Rule 60(b)(6), which allows a court to grant relief from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) is "properly invoked only when there are extraordinary circumstances justifying relief or when the judgment may work an extreme and undue hardship." *See generally 53rd St., LLC v. U.S. Bank Nat'l Ass'n*, No. 18-CV-4203, 2023 WL 8283656, at *3 (E.D.N.Y. Nov. 30, 2023) (internal citations omitted). The party seeking relief has the burden to prove extraordinary circumstances." *Id*.

It is well-established that "Rule 60(b)(6) only applies if the reasons offered for relief from judgment are not covered under the more specific provisions of Rule 60(b)(1)-(5)." *See Gustavia Home, LLC v. Hoyer*, No. 16-CV-4015, 2022 WL 875096, at *4 (E.D.N.Y. Mar. 23, 2022) (citing *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000)); *Manney v. Intergroove Media GMBH*, No. 10-CF-4493, 2014 WL 1224171, at *7 (E.D.N.Y. Mar. 24, 2014) ("Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do not apply."). Rule 60(b)(6) is therefore inapplicable where a movant's "arguments are premised and can be considered [under] the enumerated clauses of Rule 60(b)." *Gustavia Home*, 2022 WL 875096, at *4. In other words, Rule 60(b)(6) and the preceding five enumerated provisions under Rule 60(b) are mutually exclusive. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988).

Here, the Defendant maintains that both the Settlement Agreement and the Judgment amount of $6.88 million constitute an extreme and undue hardship justifying relief under Rule 60(b)(6). However, with respect to a judicially approved settlement, "[a] failure to properly estimate the loss or gain from entering a settlement agreement is not an extraordinary circumstance that justifies relief under Rule 60(b)(6)." *United States v. Bank of N.Y.*, 14 F.3d 756, 760 (2d Cir. 1994).

Further, the Defendant framed his claim for relief under Rule 60(b)(6) in terms covered expressly by other enumerated provisions of Rule 60(b), reiterating allegations that he raised in support of his Rule 60(b)(2) and (b)(3) claims. *See, e.g.*, *Pastor v. P'ship for Children's Rights*, 856 F. App'x 343, 345 (2d Cir. 2021) (summary order) ("[T]o the extent Pastor relied on new evidence or the Partnership's purported 'fraud' and misconduct, such grounds for relief are cognizable only under Rule 60(b)(2) and 60(b)(3).").

Measured against the standard for applying Rule 60(b)(6), the Court denies the Defendant's request to vacate the Settlement Agreement Order and the Judgment pursuant to Rule 60(b)(6).

Having now conclusively determined that the Rule 60(b) Motion must be denied as the Defendant has failed to meet his burden of proof under Rules 60(b)(2), (3) and (6), the Court next addresses the separate motions for sanctions that the parties lodged against one another.

### B.    The Sanctions Motions

### 1.    The Defendant's Sanctions Motion

The crux of the Defendant's contention for sanctions against Mr. Hertzberg is that he filed the complaint initiating the Landsmanas Stern Action for an improper purpose. The Second Circuit has held that a complaint is not filed for an improper purpose if it is not frivolous. "[I]t would be counterproductive to use Rule 11 to penalize the assertion of nonfrivolous substantive claims, even when the motives for asserting those claims are not entirely pure." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) (quoting and adopting analysis in *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1361 (9th Cir. 1990)). "'Although a frivolous position will often signal an improper purpose,' frivolousness alone does not give rise to a finding of improper purpose, absent something more." *Ammann v. Sharestates, Inc.*, No. 21-CV-2766, 2024 WL 1956237, at *3 (E.D.N.Y. Mar. 21, 2024) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 391 (2d Cir. 1985)). Thus, "court[s] may infer an improper purpose if, in light of [a party's] conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit." *Id.* (quotation marks and citation omitted). In other words, there is a violation of Bankruptcy Rule 9011 "when it is patently clear that a claim has absolutely no chance of success." *Moxey v. Pryor*, No. 15-cv-4632, 2017 WL 1229735, at *3 (E.D.N.Y. Mar. 31, 2017)

(quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986)) (quotation marks omitted). All doubts must be resolved in favor of the signer of the pleading. *See Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 242 (E.D.N.Y. 2011). In the end, whether sanctions are imposed is a decision that lies within the discretion of the court. *See, e.g., Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (holding "sanctions under Rule 11 are discretionary, not mandatory.").

The Court finds that the Defendant has not carried his burden of proof for sanctions. *See Clean Air Car Serv. & Parking Branch Three, LLC v. Clean Air Serv. & Parking Branch Two, LLC*, No. 24-CV-05444, 2025 WL 1005838, at *2 (E.D.N.Y. Apr. 3, 2025) (moving party has the burden and only after a prima facie case is established does the burden shift to the other party) (citing *In re Kliegl Bros. Univ. Elec. Stage Lighting Co.*, 238 B.R. 531, 541 (Bankr. E.D.N.Y. 1999). The Defendant failed to present any admissible evidence supporting his allegations of any improper purpose by Mr. Hertzberg in filing the Complaint (and as amended, the Second Amended Complaint). The Defendant's conclusory and unsubstantiated statements do not suffice.

Even if the Defendant presented a prima facie case, the record supports a rebuttal on the part of Mr. Hertzberg. Applying the Second Circuit's standard of "objective unreasonableness" when considering a motion for sanctions pursuant to Rule 11 (as made applicable here by Bankruptcy Rule 9011), see *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003), the Court would find that the Defendant's allegations pertaining to the complaint filed by Mr. Hertzberg do not give rise to sanctionable relief for the Defendant. "If a factual allegation in a complaint, motion or other paper filed with the court has no evidentiary support, sanctions are appropriate unless the paper includes a specific disclaimer that additional investigation is necessary." *Scientific Components Corp. v. Sirenza*

*Microdevices, Inc.*, No. 03-CV-1851, 2007 WL 1026411, at *2 (E.D.N.Y. Mar. 30, 2007) (citing *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)). On the other hand, sanctions are not appropriate if "evidentiary support is merely weak and the claim is unlikely to prevail, as opposed to being utterly lacking in support." *Id.* (citing *O'Brien*, 101 F.3d at 1489).

Here, Mr. Hertzberg responded to the sanctions motion by explaining that the allegations in the complaint were "based principally upon the report of KPMG Bahamas, which was retained by the Central Bank of Bahamas in 2019, in connection with Mr. Molina's efforts to own a Bahamian bank called PIBL." Hertzberg Opposition, at ¶¶ 8-9. Mr. Hertzberg further explained that information gleaned from document production from Mr. Molina supported the allegations in the complaint. *Id.* at 9. Additionally, as pointed out by Mr. Hertzberg, objections to the Defendant's discharge under § 727 were similarly asserted by other interested parties in separate adversary proceedings. *Id.* at 11. It thus cannot be concluded that the allegations underlying the complaint were completely baseless. Nor can it be concluded that it is "patently clear" the claims in the complaint have "absolutely no chance of success." *Moxey*, 2017 WL 1229735, at *3; *see Fischoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable. The operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands.") (internal quotation marks and citation omitted).

For these reasons, the Court denies the Defendant's Sanctions Motion, and the Motion to Compel is denied as moot.

### 2.    The Plaintiff's Sanctions Motion

The Plaintiff contends that sanctions must be imposed against the Defendant because he submitted judicial decisions and other governmental documents that are alleged to have been intentionally altered from the original versions.

Based on the record, the Court does not find that the Plaintiff established the Defendant's bad faith. While the Court finds the Defendant's explanation of the English-translated version of the Argentine ruling he submitted to be problematic such that it does give the Court some pause for concern, the Court notes that the same ruling in the original Spanish language was also submitted by the Defendant. Thus, an argument that the Defendant may have attempted to deceive or otherwise "pull a fast one" is stripped of its impact. The Court does not find it likely that the Defendant would intentionally submit a highly inaccurate translation of a ruling with the hopes of gaining an advantage for his position while at the same time also submitting the same ruling in its original native language. The Court therefore declines to exercise its inherent powers to sanction the Defendant based on the submission of the wrongly translated judicial ruling.

The Court is particularly troubled, however, by the Defendant's multiple case citations in his response to the Plaintiff's Sanctions Motion that appear to be fictional or are completely different from the legal proposition that the Defendant cited the case for in his papers. At oral argument, the Plaintiff's counsel stated that they were not able to find certain cases identified by the Defendant. *See* Dec. 19 Tr. at 36:17-37:25. The Court, too, was not able to locate several cases cited by the Defendant. Although the Plaintiff's counsel raised the point at the December 19 hearing, the Defendant did not refute the case citation issue or otherwise offer an explanation.

"Without question, it is improper and unacceptable for litigants – including pro se litigants – to submit 'nonexistent judicial opinions with fake quotes and citations.'" *Anonymous v. N.Y.C. Dep't of Educ.*, No. 1:24-cv-04232, 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024) (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023)). Regardless of the source for the questionable case citations, the fact remains that some of the cases cited by the Defendant do not exist. *See, e.g., In re Disciplinary Proceeding Against The*

40

*Law Offices of Michael S. Pasano*, 2007 WL 1044517 (N.D. Ill. 2007) (cited by the Defendant but could not be located); *L-7 Designs, Inc. v. Old Navy (LLC)*, 647 F. Supp. 2d 181 (E.D.N.Y. 2009) (same); *Zaldivar v. Los Angeles County*, 170 Cal. App. 3d 632 (1985) (same); *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 F. Supp. 2d 1060 (E.D. Cal. 2007) (same).

Because the record reveals that the Defendant has submitted "fake" cases to the Court, the question is what consequence, if any, should the Defendant face as a result. "Sanctions may be imposed for submitting false and nonexistent legal authority to the Court." *Anonymous*, 2024 WL 3460049, at *7; *see Ramirez v. Humala*, No. 24-cv-242, 2025 WL 1384161, at *1 (E.D.N.Y. May 13, 2025) (listing cases and finding "the Second Circuit, as well as district courts across the country, have found the submission of nonexistent case citations in filings to the court to constitute sanctionable conduct under Rule 11(b)(2)."). Courts presented with the issue of fictitious case citations and the imposition of sanctions have reached different outcomes. "Courts across the country have issued sanctions against attorneys and pro se parties for submitting fictitious case citations, fictitious quotations, and related misrepresentations to the court, including (1) monetary sanctions; (2) striking the filing containing the fictitious citations ; (3) requiring written notification to the client and the judges incorrectly identified as having authored the fictitious cases cited; (4) dismissing the complaint; and (5) dismissing or denying the appeal." *United States v. Hayes*, 763 F. Supp. 3d 1054, 1071-72 (E.D. Cal. 2025) (surveying cases) (internal citations omitted).

After careful consideration, the Court declines to impose monetary sanctions against the Defendant under the circumstances. *See, e.g., Anonymous*, 2024 WL 3460049, at *7 ("[T]he Court is mindful of its 'obligat[ion] to afford a special solicitude to pro se litigants,' which 'includes leniency in the application of procedural rules.'") (quoting *Rosa v. Doe*, 86

F.4th 1001, 1007 (2d Cir. 2023)); *id.* (declining to sanction the offending pro se litigant and issues a warning that the Court will not be as forgiving if there are future violations).

To be clear, notwithstanding the above, the Court does not conclude that the Defendant should face no consequence for the fictitious case citations. Going forward, the Defendant shall (1) file contemporaneously with each document (each a "Filed Document") that he files or causes to be filed in the Chapter 7 case and in any associated adversary proceeding a statement in his name sworn under penalty of perjury that certifies that he has verified the accuracy of each legal authority (including, but not limited to, cases, opinions, reports, statutes, articles) that he cites or quotes in the Filed Document, and the Defendant shall keep and maintain a complete, legible copy of all such legal authority until such time when the Chapter 7 case is closed by an order of final decree and all associated adversary proceedings have been closed. *See, e.g., Kruglyak v. Home Depot U.S.A., Inc.*, No. 22cv00024, 2025 WL 900621, at *3 (W.D. Va. Mar. 25, 2025) (finding pro se litigant who cited fictitious and misrepresented case holdings did not act in bad faith but nonetheless ordered that the pro se litigant identify all cases resulting from legal research performed from generative AI and verifying accuracy).

Separate from the Defendant's Sanctions Motion, the Defendant requested sanctions against the Plaintiff in connection with his response to the Plaintiff's Sanctions Motion. The Court denies the Defendant's request for sanctions because the Defendant failed to abide by the safe harbor noticing period under Rule 11(c)(2). "The safe-harbor provision is a strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012); *see also Guarino v. Resciniti (In re Resciniti)*, No. 8-16-70669, Adv. Pro. No. 8-16-08068, 2019 WL 1451278, at *1 (Bankr. E.D.N.Y. Mar. 29, 2019). Here, there is nothing to indicate that the 21-day safe harbor notice period was provided by the Defendant.

42

Accordingly, the Defendant's request for additional sanctions against the Plaintiff is procedurally defective and is denied.

## III.    Conclusion

For all the reasons stated above, the Defendant's Rule 60(b) Motion seeking to reopen the Landsmanas Stern Action and to set aside the Settlement Agreement Order and the Judgment pursuant to Rules 60(b)(2), (b)(3) and (b)(6) is denied. The Defendant's Sanctions Motion seeking to impose sanctions against Mr. Hertzberg is denied. The Defendant's Motion to Compel seeking to compel production by the Plaintiff is denied as moot. The Plaintiff's Sanctions Motion seeking to impose sanctions against the Defendant is denied, and the Defendant's request to impose additional sanctions against the Plaintiff is denied.

The Defendant shall (1) file contemporaneously with each Filed Document he files or causes to be filed in the Chapter 7 Case and in any associated adversary proceeding a statement in his name sworn under penalty of perjury that certifies that he has verified the accuracy of each legal authority (including, but not limited to, cases, opinions, reports, statutes, articles) that he cites or quotes in the Filed Document, and the Defendant shall keep a complete copy of all such legal authority until such time when the Chapter 7 case is closed by an order of final decree and all associated adversary proceedings have been closed.

So Ordered.

Dated: September 22, 2025
    Central Islip, New York

_Louis A. Scarcella_
**Louis A. Scarcella**
**United States Bankruptcy Judge**